McHugh, J.
Following issuance of this Court’s order of May 23, 1994 [2 Mass. L. Rptr. No. 10, 177 (July 11, 1994)], several issues remain.[1] Those issues are resolved, or not resolved, in the following fashion for the following reasons:
1. First State Insurance Company’s Motion for Summary Judgment. The Motion is ALLOWED. First State’s position with respect to its insured’s is no different than the position of the other insurers with respect to theirs. The rationale for allowance of the other insurers’ motions for summary judgment thus is fully applicable to First State.
2. Motions for Summary Judgment Based on the Non-Waiver Agreement. In the Order entered May 23, 1994, the Court ruled that when the allegations of the complaint in the actions commenced by the sovereigns in federal court were laid alongside the language of the relevant insurance policies, no duty to defend arose. That ruling applied to the policies issued by Employers Insurance of Wausau (“Wausau”) and thus to Wausau’s policy-generated obligation to defend.
Nevertheless, the insureds contend that a so-called non-waiver agreement they entered with Wausau or Wausau’s actions after the non-waiver agreement was signed, or both, require Wausau to pay defense costs. The Senior Georges (Charles George, Sr., Charles George Trucking Company and the Charles George Land Reclamation Trust) and Dorothy George have filed motions for summary judgment seeking such a ruling. Wausau, in addition to resisting the foregoing motions, has filed a motion of its own against the Junior Georges (Charles George, Jr. and James George) seeking a declaration that it has no obligation to defend arising outside of the policy provisions.[2]
The insured’s non-waiver arguments have two prongs. First is their claim that the agreement itself is contractual obligation to defend through trial. Second, is their claim that Wausau’s actions after entry of the non-waiver agreement led them reasonably to believe that Wausau would provide a defense through trial, that they relied on that belief to their detriment and that Wausau thus was estopped from ending, or waived its right to end, its defense of their interests.
The first argument involves pure contractual interpretation. Where, as here, the contract is unambiguous, the task of interpretation presents a question of law alone. Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992). The terms of the non-waiver agreement simply do not give rise to a defense obligation separate and apart from any defense obligation the policies may contain. The non-waiver agreement simply embodies an agreement by both sides that no step taken by the insurer will constitute an implied waiver of its right to claim that the policy does not require it to take that step or to assert against the insurer any defense the policy may contain notwithstanding prior action that may be inconsistent with the defense. The manifest purpose of the non-waiver agreement and the narrow purpose its language embraces is avoidance of waiver claims like those that frequently surface when an insurer undertakes a defense without clearly stating limitations inherent in the undertaking. Merrimack Mutual Fire Ins. Co. v. Nonaka, 414 Mass. 187, 191-92 n.6 (1993).
Turning to waiver or estoppel, there is, first of all, no waiver. I have ruled that the policies did not require the insurers to defend the claims asserted in the sovereign’s complaints. In Massachusetts, although an insurer can surrender through waiver a defense it might have asserted, it cannot through “waiver” be subjected to an obligation the policy never contained. Id. at 191.[3]
Secondly, however, the record does not now eliminate all genuine issues of material fact with respect to estoppel. Even under the recent case of Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991), the party moving for summary judgment has the burden of filing papers that, on their face, demonstrate the absence of any genuine, issue of material fact. Until that burden is met, the opposing party has no burden of any kind. Smithv. Massimiano, 414 Mass. 81,85-86 (1993). Here, although estoppel seems unlikely, the moving parties have not met the initial burdens the law imposes on them. Further proceedings therefore are necessary.
3.Motions to Amend. The senior Georges and Dorothy George have moved to amend their answer to the Wausau complaint to assert crossclaims against other insurers based on G.L.c. 93A and 176D. The motion is DENIED. As the next section of this Memorandum indicates, allowance of the amendment would be futile. See All Seasons Service, Inc. v. Commissioner of Health & Hospitals of Boston, 416 Mass. 269, 272 (1993).
*248 4. Insurers’ Motions for Summary Judgment on Claims Asserted Under G.L.c. 176D and 93A. There are two parts to the insured’s claims under G.L.c. 176D and 93A. Part one is that, even if the policies themselves give rise to no defense obligation, the statutes require prompt investigation and notification of defenses when an insured asserts that a claim is covered. Bad faith failure to conduct such an investigation, and failure to provide proper notice, the insureds maintain, entitles them to the coverage they sought.
Under Massachusetts law, “[a]n insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to have committed a violation of G.L.c. 93A.” Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987). That being the case, the notion that there can be a bad faith denial of coverage based on a correct interpretation of the policy approaches the realm of metaphysics. Beyond that, even assuming an improper investigation and response, however, it is impossible to see how the insureds were damaged when a proper response and a proper investigation would have allowed the insurers to disclaim all coverage.
The second aspect of the insured’s claim is that, even if there is no coverage under the policies, the “drafting history” of the policies and “representations made by the insurance industry” may lead to a finding that coverage for these claims nonetheless exists. That argument has been made to and squarely rejected by the Supreme Judicial Court which even went so far as to strike from the record amicus briefs filed to urge its acceptance. Polaroid Corp. v. The Travelers Indemnity Co., 414 Mass. 747, 753 n.7 (1993). Under the circumstances of this case, there simply is no viable claim under G.L.c. 93A or c. 176D for failing to provide a defense under policies that required no defense.[4]
5. Allocation Claims. In my Order of May 24, 1994, I ruled that Wausau’s motion for allocation of defense costs was moot because none of the insurers had an obligation to defend. Wausau nevertheless asserts that there may be a basis for allocation if, and to the extent that, the doctrine of estoppel requires it to defend even when the policy terms do not. I disagree. It is one thing to say that comparable contractual terms under which a number of different insurers have agreed to provide the insured with exactly the same benefit may give rise to an equitable allocation of the common obligation when one of the insurers actually provides that benefit. It is quite another to say that the unilateral act of an insurer that bestows on the insured a benefit to which the insured is not entitled under the policy, and which none of the others have agreed to provide, simultaneously imposes on those others an obligation to contribute. My view that the allocation claim is moot is unaffected by the survival of the estoppel claim against Wausau.
Continental’s allocation claim falls with that of Wausau and the other insurers. None had an obligation to defend and no equitable basis for requiring the insurers to share the cost of fulfilling a common obligation therefore arises.[5]
6.Claim for Defense Costs. Finally, the insureds claim that Wausau failed to pay some of the costs it should have paid during the time it was actually providing the defense. That claim, like the estoppel claim, is fact based and cannot be decided on this motion for summary judgment.
ORDER
In light of the foregoing, it is hereby ORDERED that
A. Judgment enter in the form attached hereto as Exhibit A. Because that judgment disposes of all claims in this protracted litigation save the estoppel and defense cost claims against Wausau described in ¶¶3 and 6, supra, and because resolution of those claims involves a fact-based issue that will not affect the broader legal issues presented by the remaining claims and because this litigation has been protracted, there is no just reason for delay in entry of the judgment this paragraph orders. Said judgment therefore shall enter forthwith.
B. The Court will hold a status conference to consider the mechanism for resolving the remaining claims and for dealing with the matters, if any, not concluded by this Order on January 25, 1995 at 3:00 p.m.

A11 issues, with the exception of the first two, were set forth by the parties in a document entitled “Joint List of Issues” they signed and filed on August 29, 1994 (Paper No. 94).

In addition to resisting the Motion on the merits, the Junior Georges have argued that the motion was defective in form and timing. Perhaps it was. By the end of the briefing the Court allowed, however, no one suffered any prejudice thereby and I therefore proceed to the merits. The Court, of course, has the power to render judgment against party moving for summary judgment if, after hearing, it appears appropriate to do so. Mass.R.Civ.P. 56(c).

Even were the law otherwise, it would be enormously difficult to conceive of circumstances under which actions taken after execution of an unaltered non-waiver agreement were deemed to have created an implied waiver.

 To the extent that the claims against Wausau survive on the narrow theory of estoppel, so, too, does a parallel claim under C.93A.

 That result may not encourage provision of a defense in doubtful cases. Results, however, do not necessarily drive principle. In any event, the requirement that a defendant who breaches a contractual defense obligation pay the costs actually incurred coupled with the provisions of c. 93A and 176D provides incentive aplenty.